This is an appeal from an order of Cleveland Municipal Housing Court Judge Raymond Pianka granting a permanent injunction prohibiting appellants Natalie Modic and Downtown Office, Inc. (Modic) from presenting adult entertainment at the Office Lounge, a bar and restaurant located at 3230 Euclid Avenue in Cleveland. Modic claims that applicable City of Cleveland ordinances are unconstitutionally vague, that the bar does not merit regulation under those ordinances, that the injunction is vague and overbroad, and that the City utilizes an unconstitutional licensing scheme. We disagree and affirm the injunction.
On April 16, 1998, a building inspector for Cleveland's Division of Building and Housing issued a violation notice to the Office Lounge after he inspected the premises and determined that the bar was presenting topless female dancers. The building did not have a certificate of occupancy authorizing such entertainment and was ineligible to receive such a certificate because it was located within 1,000 feet of a church. The violation notice ordered the unauthorized use stopped. The inspector returned to the premises on May 29, 1998, and discovered that the bar was still presenting topless dancers.
On June 3, 1998 the City filed a complaint in Cleveland Municipal Housing Court against Emile and Hayat Daher, the owners of the property, alleging that they were operating an adult cabaret on the site in violation of applicable zoning laws, Cleveland Codified Ordinances (C.C.O.) 347.07 and 3105.10. On June 4, 1998 it amended the complaint to add Modic and Downtown Office, Inc., the tenants of the building, as defendants and sought a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the Dahers or Modic from operating the site as an adult cabaret. The Dahers have not appeared or defended Modic's use of the premises.
C.C.O. 347.07 describes adult entertainment uses and regulates location for such uses within the city. An adult cabaret is defined, inter alia, as:
 [A] commercial establishment, including a nightclub, bar, restaurant or similar establishment, which regularly features persons who expose specified anatomical areas, or dancers, strippers or similar live entertainers in performances which are distinguished or characterized by the exposure of special [sic] anatomical areas or by the depiction or description of specified sexual activities[.] C.C.O. 347.07(b)(6).
Specified anatomical areas includes the female breast below a point immediately above the top of the areola. C.C.O. 347.07(b)(2)(A)(4). An adult cabaret is considered an adult entertainment use, and is prohibited from locating within 1,000 feet of a church. C.C.O. 347.07(c)(5). C.C.O. 327.02 requires a business to obtain a certificate of occupancy prior to establishing or changing a building's use and operating without the required certificate violates C.C.O. 327.02 and 3105.10. Provided that building and zoning requirements for the remainder of the business are satisfied, a certificate adding an adult entertainment use is authorized if the location requirements of C.C.O. 347.07(c) are met. Even if it meets the location restrictions, an adult use is still subject to criminal sanctions if it does not obtain the authorization first.
The judge granted the motion for a temporary restraining order on June 5, 1998. On June 30, 1998, Modic submitted discovery requests to the City, including interrogatories and requests for admissions pursuant to Civ.R. 36. Modic requested that the City admit:
 1. The defendants may sometimes feature live performances at their business establishment which expose specified anatomical areas or depict specified sexual activities [sic] without being an adult cabaret within the meaning of [C.C.O.] 347.07, so long as they do not do so regularly.
 2. The defendants are not an adult cabaret within the meaning of [C.C.O.] 347.07 if they present live performances which do not feature either specified anatomical areas or specified sexual activities 80% of the entire time that the business is open to the public, and feature performances which do include specified anatomical areas or specified sexual activities the remaining 20% of the time the business is open to the public.
The remaining requests changed the percentages to 75%-25%, 70%-30%, 65%-35%, and 60%-40%, then requested similar admissions when the frequency was measured by the presentation of adult entertainment on a specific number of days per week or month. Finally, Modic requested an admission that the Office Lounge could feature, on an irregular basis, adult entertainment without qualifying as an adult cabaret. Modic also submitted interrogatories to the City, in which she sought the City's definition of the term regularly features.
On July 21, 1998, the judge granted a preliminary injunction and on August 5, 1998 Modic filed an answer and counterclaim to the City's complaint, seeking, inter alia, a declaratory judgment that C.C.O. 347.07 was unconstitutionally vague both facially and as applied, and that the location requirement was unconstitutional because the denial of a certificate of occupancy was not subject to prompt judicial review.
Because the City did not respond to Modic's discovery requests, on September 28, 1998, she filed a motion to compel discovery and a document captioned Notice of Matters Deemed Admitted By Plaintiff. The motion to compel sought only to require the City to respond to the interrogatories and document requests. There is nothing in the record that shows a ruling on the motion, but it does contain the City's responses to interrogatories filed on November 6, 1998. On November 13, 1998, the City filed a motion for a protective order to prevent the production of some documents, and objected to Modic's requests for admissions as inappropriate. There is, again, no record of a ruling on the motion, nor any indication that Modic pursued any further attempt to compel discovery.
On December 28, 1998, a hearing on the permanent injunction and counterclaim was held before Magistrate Barbara A. Reitzloff. The City presented evidence that the Office Lounge was located within 1,000 feet of the First Methodist Church at 3000 Euclid Avenue and that the church also operated a shelter for homeless women and children at that address. It also showed that the Office Lounge had a certificate of occupancy authorizing a restaurant and lounge use, but did not have authorization for an adult entertainment use under C.C.O. 347.07. Lisa Thomas, the City's Commissioner of Building and Housing, testified that she was unaware that the Office Lounge had applied for a certificate of occupancy authorizing an adult entertainment use, either before or after being notified of the alleged violation.
Thomas was extensively cross-examined about her interpretation of the provisions of C.C.O. 347.07, and specifically questioned about the definition of an adult cabaret as a business that regularly features persons who expose specific portions of their bodies, including topless females. Thomas testified that she could not quantify a number or percentage of time described nudity could be displayed before it became regular but apparently conceded that, hypothetically, such displays could occur sometimes without becoming regular.
Modic testified in her own defense and admitted that the Office Lounge had presented topless women performing sexual or erotic dances for nine years prior to the TRO and preliminary injunction. While she testified that she did not understand the phrase regularly features, she agreed that there was always topless dancing prior to the injunction and since then has operated the business as a bikini bar, presenting similar entertainment, but without exposing any specified body parts. Modic testified that, while she had always operated as an adult cabaret, if that was prohibited, she wanted to know how often she could present topless dancing without being found to regularly feature such entertainment under C.C.O. 347.07. Further, she admitted that she was aware of the First Methodist Church at 3000 Euclid Avenue, but was unaware that it was within 1,000 feet of the bar.
On June 17, 1999, the magistrate issued a decision and opinion granting the motion for permanent injunctive relief and deny Modic's counterclaim. The magistrate found that the term regularly features was not unconstitutionally vague, and permanently enjoined the Defendants, their employees, agents, heirs, and assigns from operating an adult cabaret at 3230 Euclid Avenue. Modic filed objections to the decision, and on September 2, 1999, the judge overruled the objections and granted the permanent injunction. The judge's injunction, however, differed from that proposed by the magistrate and stated:
 Defendants are permanently enjoined from using the property at 3230 Euclid Avenue, Cleveland Ohio as an establishment that is characterized by an emphasis on persons who expose specified anatomic areas, as defined in Cleveland Codified Ordinance § 347.07(C)(2), or that features dancers, strippers, or similar live entertainers in performances which are distinguished or characterized by the exposure of the same specified anatomical areas.
The first two assignments, which can be addressed together, state:
 I. THE TRIAL COURT ERRED IN HOLDING THAT THE DEFINITION OF ADULT CABARET SET OUT IN CLEVELAND COD. ORD. § 347.07(B)(6), WHICH DEFINES THAT USE AS AN ESTABLISHMENT THAT REGULARLY FEATURES PERFORMANCES THAT INCLUDE THE EXPOSURE OF SPECIFIED ANATOMICAL AREAS WAS NOT UNCONSTITUTIONALLY VAGUE.
 II. THE TRIAL COURT ERRED IN REFUSING TO ISSUE A DECLARATORY JUDGMENT CONSTRUING THE PHRASE REGULARLY FEATURES AS USED IN CLEVELAND COD. ORD. § 347.07 TO DEFINE ADULT CABARETS AND IN FAILING TO DECLARE THAT DOWNTOWN OFFICE, INC. COULD PRESENT DANCE PERFORMANCES AT ITS ESTABLISHMENT THAT FEATURED SPECIFIED ANATOMICAL AREAS THIRTY PERCENT OR SOME OTHER SPECIFIC PORTION IT WAS OPEN FOR BUSINESS WITHOUT BEING AN ADULT CABARET WITHIN THE MEANING OF § 347.07.
Modic first claims that the phrase regularly features is unconstitutionally vague and that the judge should have either struck down the ordinance for vagueness or, as a matter of law, construed the phrase to allow nude dancing to occur at some defined frequency without being considered regular. We give deference to the judge's findings of fact, but address the constitutional challenge de novo. See, e.g., Ohio Historical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 466,471, 613 N.E.2d 591, 595-96 (court reviewing agency action defers to factual findings, but must review legal and constitutional issues independently).
A vagueness challenge under the due process clause can be maintained for two separate reasons. An ordinance is unconstitutionally vague if it fails to provide fair notice of the conduct it prohibits, or if it allows official discretion that leads to arbitrary or discriminatory enforcement. Chicago v. Morales(1999), 527 U.S. 41, 56, 119 S.Ct. 1849,1859, 144 L.Ed.2d 67. Although vagueness challenges usually are analyzed only as applied, the ordinance here is subject to a facial challenge if it affects constitutional rights. Moreover, where First Amendment rights are at issue, we require a greater degree of specificity to avoid chilling protected conduct. In re Complaint against Harper (1996),77 Ohio St.3d 211, 222, 673 N.E.2d 1253, 1262-63. We carefully guard against vague standards regulating expression to avoid the risk that such regulations might mandate silence as the only safe response. Id. Where First Amendment freedoms are not at stake, however, a vagueness challenge does not require exactitude, as only those laws that provide no standard whatsoever run afoul of the doctrine. An imprecise standard is not vague so long as it remains comprehensible. Id. at 221,673 N.E.2d at 1262.
Modic's vagueness challenge targets the phrase regularly features and specifically the term regularly. We note at the outset that her admissions at the permanent injunction hearing defeat any challenge to the ordinance as applied. The Office Lounge always had topless dancing, she operated the business without considering the proximity of the church and, in the future, she wanted to operate the business as an adult cabaret or present as much adult entertainment as possible without it being classified an adult cabaret. Whatever the future might hold for Modic's enterprise, she operated an adult cabaret prior to the injunction and can obtain relief only if the ordinance is void on its face.
We examine the vagueness challenge here in recognition that the ordinance at issue is designed to create permissible time, place, and manner restrictions to combat the secondary effects of the protected expression, in this case adult entertainment. Renton v. Playtime Theatres, Inc. (1986), 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29. If the zoning ordinance qualifies as a time, place, or manner restriction under Renton, its constitutionality is determined by whether it is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication. Id. at 50, 106 S.Ct. at 930. Such an ordinance is not considered content-based, as it is aimed at secondary effects rather than the expressive activity. Id. at 48-49,106 S.Ct. at 929-30.
Modic did not argue that, as applied, the City's ordinance was not aimed at adverse secondary effects.[1] Instead she contended that below some frequency threshold, the presentation of adult entertainment would not cause such secondary effects, and therefore the ordinance became unconstitutional at some undefined point where the regularity of topless performances fell below that frequency. She suggests the regularity requirement of C.C.O. 347.07 necessarily implies that the Office Lounge can present some adult entertainment without becoming an adult cabaret, and unless the ordinance allows citizens to ascertain the exact point at which adult entertainment will not produce undesirable secondary effects, it is unconstitutionally vague.
The City counters that the phrase regularly features must be defined as a whole, and that use of the word regularly does not thereby require or allow the City to state a distinct frequency below which topless entertainment is not subject to the zoning ordinance. If the ordinance did not reach protected expression, the common-sense interpretation of the term regularly features would sufficiently describe the conduct for ordinary citizens. As the magistrate stated in her decision:
 Regular is defined as recurring, attending, or functioning at fixed or uniform intervals. Merriam-Websters Collegiate Dictionary 985 (10th Ed. 1997). The term features is also easily understood when considered in the context of this situation. Feature is a term identified as a special attraction, or something offered to the public or advertised as particularly attractive. Id. at 426. When read in the proper syntax, regularly means conforming to a normal, typical and expected behavior or mode of action, and features means showing or holding an item or performance out to the general public as an emphasized or highlighted occurrence.
Modic argues that this ordinance regulates protected expression and, to ensure that such expression is not impermissibly chilled, we must address the facial challenge and apply close scrutiny.
Modic suggests that a Cleveland theater might hesitate to present a play containing nudity based on some confusion over the phrase regularly features. The confusion about which Modic complains, however, is not with the content of the expression, but with its frequency. The focus of the ordinance is on the likelihood of secondary effects in a particular location, and not on the expression itself. The common-sense construction of the phrase regularly features is thus further reinforced by the stated purpose of the ordinance. A person contemplating the presentation of this adult expression is put on notice that a city might regulate such speech to avert undesirable secondary consequences. While municipal officials have some discretion in enforcement, that discretion is not based on the content of the expression, but on the existence of its secondary effects. Because the primary focus of C.C.O. 347.07 is to regulate secondary effects, we find that a qualifying Renton-type zoning ordinance is not subject to heightened vagueness scrutiny given to other enactments affecting First Amendment rights.
We note, however, that even in the First Amendment context, some imprecision is unavoidable; demonstrators cannot know exactly when exhortative speech creates a danger of immediate violence, and those who present adult entertainment tread near an imprecise line between obscene and non-obscene performance. Similarly, those contemplating nudity or sexually expressive performance must accept some gray area concerning the definition of regularly features here. Those wishing to present such entertainment without this concern can do so in proper locations. Although Modic has hinted at selective prosecution, she has neither raised nor presented evidence of such a defense. The ordinance restricts only the location of the regulated entertainment, its common-sense terminology gives sufficient notice of the restricted conduct, and it does not give officials unfettered or unwarranted discretion to stifle protected expression.
Because the ordinance is not unconstitutionally vague, the judge had no duty to give the ordinance a limiting construction or define the term regularly features as a specific frequency. Both the magistrate and the judge recognized the City's argument that even a low frequency of occurrence can establish regularity in proper circumstances. Modic testified that she wished to present adult entertainment up to the limit of the proposed regularity restriction and, thus, would regularly present adult entertainment at whatever frequency was set.
Modic has submitted a recent decision, Schultz v. City of Cumberland (C.A.7, 2000), 228 F.3d 831, for our consideration in defining the phrase regularly features. The Schultz court interpreted the phrase to include a concept of permanence, thus excluding from its ambit theaters and playhouses that might schedule a play such as Hair for a temporary run. The Schultz court defined the term regularly features to mean giving special prominence at uniform, orderly intervals as a matter of normal course, and doing so on a permanent basis. Id. We agree that the definition includes giving special prominence and as a matter of normal course, but reject any need to show uniform, orderly intervals because adoption of that standard would allow adult uses as long as they did not occur at any definite schedule. We further find that our adoption of the permanent basis interpretation would not affect this case, and therefore neither adopt nor reject it.
Again, Modic cannot benefit from a permanent basis construction in an as applied challenge, because she testified to operating the club as an adult cabaret for the past nine years, expressed a desire to present as much adult entertainment as possible at the club, and did not intend to cease presenting such entertainmentunless forced to do so. Moreover, we agree with the Schultz court that its permanent basis interpretation does not lend itself to a facial challenge, because the construction does not create a realistic danger that the Ordinance will significantlycompromise the First Amendment rights of parties not before the Court. Id.
Similarly, our failure to adopt the permanent basis construction at this time also does not lend itself to a facial challenge. Although one can imagine circumstances in which the permanent basis determination would become an issue, those situations would not be so pervasive as to render the statute facially unconstitutional. Id. Because there is no need to decide whether a permanent basis construction is necessary here, we neither adopt or reject such a standard as a matter of law, although we note its possible existence as a factor in as applied determinations of whether an adult use is regularly featured.
As already stated, the question is whether a law-making body or judge is obligated, or even able to state as a matter of law, that a given frequency of adult entertainment will or will not produce undesirable secondary effects. The existence of secondary effects would not depend solely upon the frequency of the expression, but on other circumstances related to, inter alia, the nature of the business, its location, and the timing of the performances. Because a number of circumstances can affect the existence of secondary effects, their existence cannot be defined by the frequency of adult entertainment alone. As noted supra, this imprecision is allowable where the ordinance in question restricts only the location of the entertainment. The first and second assignments of error are overruled.
Modic's third assignment of error states:
 III. THE TRIAL COURT ERRED IN FAILING TO GIVE EFFECT TO THE CITY'S ADMISSIONS THAT DOWNTOWN OFFICE, INC. COULD PRESENT DANCE PERFORMANCES THAT FEATURED SPECIFIED ANATOMICAL AREAS A PORTION OF THE TIME IT WAS OPEN AND NOT BE AN ADULT CABARET AND IN FAILING TO GRANT THE DECLARATORY RELIEF DOWNTOWN OFFICE, INC. SOUGHT.
Modic here argues that the City's failure to respond to the requests for admissions necessarily resulted in those matters being deemed admitted pursuant to Civ.R. 36. On that basis she contends the declaratory judgment should have been granted in her favor interpreting C.C.O. 347.07(b)(6) to allow her to present adult entertainment a specified portion of the time, thereby avoiding the adult cabaret stigma. The judge made no explicit ruling but apparently did not consider Modic's requests for admission as evidence, and we utilize the abuse of discretion standard to review the admission or exclusion of evidence. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056,1058.
The record shows that the City did not answer the requests for admission because it considered them inappropriate under Civ.R. 36, which allows only requests that relate to statements or opinions of fact or of the application of law to fact[.] The City contended that the requests did not relate to facts, and to the extent they related to the application of law to fact, the facts asserted were hypothetical. We agree. Modic's requests were not within the scope of Civ.R. 36 and, thus, could not be deemed admitted upon the City's failure to answer. See Abbott v. United States(N.D.N.Y. 1997), 177 F.R.D. 92, 93 (hypothetical questions or requests seeking legal conclusions are improper). While we realize that Modic's declaratory judgment action was necessarily based on hypothetical facts, this only means that it was inappropriate for her to request admissions from the City concerning the application of those hypothetical circumstances to C.C.O. 347.07. We agree with the Abbott court that the boundary of admissible requests is not always clear, but we find that the requests here went beyond application of law to fact and sought impermissible legal conclusions. Id. Although the City would have been well-advised to submit timely written answers or objections to the requests, it was not an abuse of discretion to fail to deem the matters admitted here. Modic's third assignment of error is overruled.
The fourth assignment of error states:
 IV. THE COURT ERRED IN ISSUING AN OVERBROAD INJUNCTION AND ONE THAT FAILED TO COMPORT WITH OHIO R. CIV. P. 65 BY SPECIFYING IN CONCRETE AND ASCERTAINABLE TERMS HOW FREQUENTLY THE DEFENDANTS COULD PRESENT TOPLESS DANCE PERFORMANCES AND NOT BE AN ADULT CABARET AS DEFINED IN CLEVELAND COD. ORD. § 347.07.
The injunction issued by the judge prohibited Modic from using the property:
 [A]s an establishment that is characterized by an emphasis on persons who expose specified anatomic areas, as defined in Cleveland Codified Ordinance § 347.07(C)(2), or that features dancers, strippers, or similar live entertainers in performances which are distinguished or characterized by the exposure of the same specified anatomical areas.
To the extent that the judge intended to prohibit more than the operation of an adult cabaret on the property, the injunction was overbroad. It appears, however, that he did not intend to expand the injunction imposed by the magistrate, but to ensure that the injunction was imposed without reference to some other document, as required by Civ.R. 65(D), as well as to clarify and supplement the ordinance's definition of adult cabaret. We find the language used to be an acceptable definition within the limits of the conduct regulated by C.C.O. 347.07 and reject the overbreadth challenge.
We have determined that the ordinance is not unconstitutionally vague, and we also reject Modic's challenge under Civ.R. 65(D). Contrary to her assertions, an injunction need not be stated in exhaustive detail; the rule requires only that the injunction be described in reasonable detail. Civ.R. 65(D); Mead Corp. v. Lane (1988), 54 Ohio App.3d 59, 67,560 N.E.2d 1319, 1327. The judge reasonably described the conduct prohibited. The fourth assignment of error is overruled.
The fifth assignment of error states:
 V. THE COURT ERRED IN FAILING TO HOLD THAT CLEVELAND COD. ORD. §§ 327.02 AND 347.07, WHICH CREATE THE PROCEDURE FOR ONE TO OBTAIN A LICENSE TO ENGAGE IN CONSTITUTIONALLY PROTECTED EXPRESSION, WERE UNCONSTITUTIONAL PRIOR RESTRAINTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS.
We have found that C.C.O. 347.07 does not require heightened vagueness scrutiny so long as it qualifies as a time, place, or manner restriction under Renton v. Playtime Theatres, supra. In this assignment of error Modic challenges the ordinance on these grounds again, arguing now that it is a licensing scheme that qualifies as a prior restraint rather than a simple zoning ordinance restricting the location of adult businesses. On that basis she asserts that the licensing scheme is unconstitutional because it does not provide for prompt judicial review. Again, we review the constitutional issue de novo. Ohio Historical Soc. v. State Emp. Relations Bd., supra.
When an individual is required to obtain a license or permit before engaging in protected expression, we consider that requirement a prior restraint and impose strict requirements on the licensing scheme. 11126 Baltimore Blvd., Inc. v. Prince George's Cty., Md. (C.A.4, 1995),58 F.3d 988, 995-96. If the ordinance is a prior restraint, a city is required to make a licensing decision in a prompt manner, and that decision must be subject to prompt judicial review. Id; FW/PBS, Inc. v. Dallas (1990), 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603.
An enactment qualifies as a prior restraint only if the expression is prohibited until permission is granted. 11126 Baltimore Blvd.,58 F.3d at 995; D.H.L. Assoc., Inc. v. O'Gorman (C.A.1, 1999), 199 F.3d 50, 56 n. 3. Zoning ordinances imposing time, place, and manner restrictions such as in Renton, however, are not regarded as prior restraints if those wishing to engage in protected speech [are] immediately free to do so anywhere in the city that [meets] the zoning restrictions imposed by the city ordinance. 11126 Baltimore Blvd., 58 F.3d at 995.
Modic contends that, because she was required to obtain a certificate of occupancy authorizing the adult entertainment use, she was subject to a licensing requirement that cannot be maintained without a provision for prompt judicial review. The City responds that a certificate of occupancy is a general requirement before any use can be approved, and thus is unrelated to the specific adult entertainment use. We find the City's argument unconvincing.
Cleveland's ordinances require a certificate of occupancy for any new or changed use of property. Operation of a business without a certificate authorizing a particular use is punishable by fine and/or imprisonment and may be imposed regardless of whether the property satisfies the requirements for issuance of the certificate. Because expression, even in the proper locations, is prohibited until permission is obtained, we can only find that Cleveland's ordinance is a prior restraint. In light of this prior restraint, the City's procedure must provide for a prompt judicial determination, a requirement it concedes is lacking.
The lack of procedural protection, however, need not and does not undermine the injunction here. Even if the shortcomings of the City's zoning methods might prohibit criminal sanctions against Modic for failing to operate with the required certificate, the fact remains that the Office Lounge is admittedly within 1,000 feet of a church and would not be eligible for a certificate even if it applied for one. We will not find the City's location restrictions unconstitutional because of infirmities in its licensing procedure. The location restrictions can be effected without reference to the licensing scheme, and without denying the enactment's overriding purpose. We find the prior restraint aspects of the ordinance severable. Simmons-Harris v. Goff (1999), 86 Ohio St.3d 1,9, 711 N.E.2d 203, 210. Because the licensing scheme does not affect the location restrictions, the City remains entitled to an injunction prohibiting the continued use of the Office Lounge as an adult cabaret. We overrule this assignment of error.
Judgment affirmed.
It is ordered that the appellee recover from appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Housing Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, J. CONCUR; JAMES PORTER, P.J. CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.
[1] Despite the fact that she testified to operating the business unnoticed for nine years.